**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR23-00894-001-TUC-SHR(EJM) |
| Plaintiff, | **Order Re: Review of Release Order** |
| v. | |
| Katrina Ambrose, | |
| Defendant. | |

Before the Court is the government's "Motion for Review of Magistrate Judge's Release Order" ("Motion") filed under 18 U.S.C. § 3145(a). Doc. 25. Defendant Katrina Ambrose filed a response in opposition. Doc. 26.

On June 13, 2023, Magistrate Judge Bruce G. Macdonald ordered Defendant "released on her own recognizance to a treatment facility." Doc. 19. The Court granted the government's motion to stay the release order and ordered expedited briefing. Docs. 20, 24. The government asks this Court to "overturn the Magistrate Judge and order [D]efendant's detention." Doc. 25 at 5. On June 22, 2023, the Court heard oral argument, granted the Government's Motion, and ordered Defendant detained with a written order to follow. This is that order.

## I.    Background

On May 24, 2023, the government filed a sworn Criminal Complaint charging Defendant with alien smuggling in violation of 8 U.S.C. § 1324. Doc. 1.

1

2      The Criminal Complaint alleges:

3

4          On or about May 23, 2023, in the District of Arizona (North
           Komelik), a United States Border Patrol Agent (BPA) was
5          conducting immigration inspections at a Border Patrol
           checkpoint when a 2005 Acura RL approached. The BPA
6          noticed the driver, later identified as Katrina Ambrose, and the
           front seat passenger, later identified as Ray Ortega, both
7          appeared to be nervous. The BPA asked if they were the only
           two people in the vehicle and Ambrose hesitantly replied,
8          "yes." The BPA asked if he was allowed to look in the trunk.
9          Ambrose replied, "it is broken and will not open" and
           continued to say they were late for an appointment and needed
10         to go. The vehicle was referred to the secondary inspection
           area. The BPA asked again if he could look in the trunk and
11         Ambrose again stated that it was broke[n] and will not open.
12         The BPA advised Ambrose that a canine unit was en route.
           Ortega blurted out, "just open it." Ambrose pulled the interior
13         trunk release allowing access to the trunk. Oscar Leon-Reyes
           was discovered inside wearing a sweat soaked shirt while
14         curled up in the fetal position. Leon was determined to be a
15         Mexican citizen illegally present in the United States.

16
      Doc. 1.
17
          On May 26, 2023, Pretrial Services issued a report recommending Defendant be
18
      detained because there is "no condition or combination of conditions that can reasonably
19
      assure the appearance of [D]efendant in court or the safety of the community." Doc. 14 at
20
      8. Defendant is a United States citizen with verified community ties, she is unemployed
21
      and on disability, and has a history of drug and alcohol use. *Id.* at 1–3. The report noted
22
      Defendant's extensive criminal history, including alcohol-related offenses, several charges
23
      relating to alien smuggling, and repeated failures to appear. *Id.* at 3–7. Specifically,
24
      Defendant failed to appear for her arraignment in a 2018 alien smuggling case and a
25
      warrant was executed, and Defendant's supervised release was revoked four times between
26
      September 2019 and September 2020. *Id.* at 6–7. While in custody for the 2019 case,
27
      Defendant admitted to methamphetamine use four days before her arrest on the warrant,
28

1    and she was found suitable for outpatient services at a substance use treatment facility

2    called the Haven. *Id.* at 7. Defendant was also evaluated by Behavioral Systems Southwest

3    and was found suitable for housing and outpatient services, but Defendant preferred to

4    remain in custody rather then be released to the halfway house, so she remained detained

5    pending sentencing. *Id.* While on supervised release following her sentence for that

6    offense, Defendant failed to attend or reschedule her intake appointment and her supervised

7    release was revoked and a warrant was executed in November 2019. *Id.* In April 2020,

8    Defendant's supervised release began, but was revoked again when she failed to report to

9    her approved residential re-entry center or her probation officer when she was released

10   from custody. *Id.*

11        In August 2021, Defendant was again charged with alien smuggling and sentenced

12   to prison time, followed by supervised release. *Id.* Again, Defendant's supervised release

13   was revoked, and she was sentenced to prison time. *Id.*

14        Based on Defendant's "history of failures to appear resulting in the issuance of a

15   warrant while under the supervision of U.S. Pretrial Services in 2019, her history of

16   noncompliance with supervision including absconding from supervised release, her mental

17   health history, and her substance use history including prior use of alcohol,

18   methamphetamine, and cocaine," Pretrial Services believed Defendant poses a risk of

19   nonappearance. *Id.* at 8. As to danger, Pretrial Services found Defendant poses a risk to the

20   community based on her criminal history, including arrests and convictions for alien

21   smuggling-related offenses, history of noncompliance with supervision, mental health

22   history, and substance use history. *Id.*

23        At Defendant's detention hearing on May 30, 2023, Magistrate Judge Maria S.

24   Aguilera continued the matter and directed Pretrial Services to have Defendant evaluated

25   "for possible residential treatment placement." Doc. 15. On June 8, Pretrial Services filed

26   an addendum to the first report, explaining Defendant had been interviewed by the intake

27   coordinator at the Haven, a residential substance use treatment facility in Tucson, and had

28   been "deemed suitable" for the program. Doc. 17 at 2. The report also said bed space was

1    available for Defendant on June 14. *Id.* Nonetheless, Pretrial Service's initial assessment of

2    Defendant's risk of nonappearance and risk of danger to the community did not change,

3    and Pretrial Services again recommended Defendant be detained. *Id.* at 6.

4        At Defendant's June 13, 2023, detention hearing, the government argued for

5    detention and defense counsel argued for release to a treatment facility. Doc. 19. Judge

6    Macdonald agreed with defense counsel and ordered "the Defendant released on her own

7    recognizance to a treatment facility on 6/14/2023 with conditions set forth in the Order

8    Setting Conditions of Release." *Id.* Judge Macdonald granted the government's oral motion

9    to stay the release order pending the filing of this appeal. *Id.*

10   **II.    Legal Standard**

11       A district court reviews a magistrate judge's detention order de novo. *See United*

12   *States v. Koenig*, 912 F.2d 1190, 1193 (9th Cir. 1990). The Bail Reform Act mandates

13   pretrial release unless the Court concludes that "no condition or combination of conditions

14   will reasonably assure the appearance of the person as required and the safety of any other

15   person in the community." 18 U.S.C. § 3142(e). The Act imposes a presumption against

16   pretrial release in certain designated cases where there is probable cause that a defendant

17   has committed one of the crimes listed in the statute or in the other circumstances set forth

18   therein. 18 U.S.C. § 3142(e). This presumption shifts the burden of production to the

19   defendant, but the burden of persuasion remains with the government. *United States v. Hir*,

20   517 F.3d 1081, 1086 (9th Cir. 2008).

21       As many circuits recognize, the "defendant's burden of production is not heavy,

22   [but] he must introduce at least some evidence." *U.S. v. Stone*, 608 F.3d 939, 945 (6th Cir.

23   2010) (internal quotations omitted); *see also U.S. v. Stricklin*, 932 F.2d 1353, 1355 (10th

24   Cir. 1991) (same "some evidence" standard); *U.S. v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.

25   1991) (same); *U.S. v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (same). That is, the

26   defendant must offer at least some evidence "or basis to conclude that the case falls 'outside

27   the congressional paradigm' giving rise to the presumption." *U.S. v. Taylor*, 289 F. Supp.

28   3d 55, 63 (D.D.C. 2018) (quoting *Stone*, 608 F.3d at 945–46). Even when rebutted, the

presumption against release remains and is to be considered alongside all other relevant factors. *Hir*, 517 F.3d at 1086.

If a defendant succeeds in rebutting a presumption of flight risk or dangerousness, or if no such presumption against release applies, the Court then considers four factors in determining whether to detain or release the defendant:

> (1) the nature and circumstances of the offense charged . . . ;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including—
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

*Id.*; 18 U.S.C. § 3142(g)(1)–(4). The government must show the defendant poses a flight risk by a preponderance of the evidence. *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). The government must show the defendant poses a danger to the community by clear and convincing evidence. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). Any doubts about the propriety of release should be resolved in the defendant's favor. *Id.* at 1405.

**III.    Analysis**

The parties do not argue any presumption of flight risk or dangerousness applies here, and they appear to agree the issue is whether the government has shown Defendant poses a flight risk by a preponderance of the evidence. Doc. 25 at 3, 5; Doc. 26 at 4, 10. The parties did not change their positions at oral argument.

///

1    **A.  Bail Reform Act Factors**

2        **1.  Nature and Circumstances of the Offense**

3        The government notes Defendant is faced with a charge that carries a maximum

4    penalty of 10 years imprisonment, if convicted. Doc. 25 at 4. Defendant concedes she faces

5    up to ten years in prison if convicted but contends that although such a potential sentence

6    might incentivize other defendants to flee, her history and characteristics "make the risk of

7    flight diminishingly small." Doc. 26 at 7. Therefore, Defendant argues, this factor does not

8    weigh in favor of detention. *Id.* Defendant's characteristics and history, however, are

9    considered in the third factor; accordingly, the Court considers only the nature and

10   circumstances of the alien smuggling charged here and finds the nature and circumstances

11   of the offense weighs against release.

12       Defendant is charged with a felony and the facts would arguably allow the

13   Government to seek an enhancement for intentionally creating a substantial risk of serious

14   bodily injury to the person in the trunk of the car Defendant was driving. U.S. SENT'G

15   GUIDELINES MANUAL § 2L1.1(b)(6) (U.S. SENT'G COMM'N 2021). Were this enhancement

16   to apply the total offense level would be 18. *Id.* Assuming a criminal history category III

17   (the Defendant's criminal history category in 21-CR-02362-JAS), the Court estimates that

18   the guideline range were Defendant to be convicted at trial would be 33 to 41 months. The

19   charge here is serious and the possible prison sentence creates an incentive to flee. This

20   factor weighs against release.

21       **2.  Weight of Evidence**

22       The weight of evidence is the least important factor to consider. The Government

23   argues the evidence against Defendant is strong. *Id.* at 4. Defendant allegedly drove a car

24   into a Border Patrol checkpoint; made claims her trunk would not open; and then opened

25   the trunk to reveal an illegal alien inside when she was referred to secondary inspection

26   and told a canine unit was on the way. When defense counsel was given the opportunity to

27   rebut these facts he did not do so. Rather, he said the facts were not unusual in this District.

28   While that is true that does not rebut the Government's contention. This factor weighs

1  against release.

2  **3.  Defendant's History and Characteristics**

3  The government argues Defendant's character, community ties, and past conduct

4  weigh against release because she has never been employed due to disability, reports

5  alcohol and unlawful narcotics use through most of her life, and her criminal history spans

6  most of her adult life. Doc. 25 at 4. Specifically, the government contends Defendant's

7  character and past conduct are "[o]f particular concern," as she has four prior convictions

8  for alien smuggling-related offenses between 2013 and 2021, and she would have still been

9  on supervised release for the 2021 offense had she not violated the terms of her supervised

10  release and been sentenced to serve time with no supervised release to follow. *Id.* The

11  government emphasizes that in three of her four alien smuggling cases, Defendant's

12  supervised release was revoked—sometimes more than once, Defendant has numerous

13  failure-to-appear charges, and Defendant has been offered substance use treatment in the

14  past and was not interested. *Id.*

15  In response, Defendant argues she has no passport, is disabled, has verified family

16  ties to the local community, and is a lifelong Arizona resident. Doc. 26 at 8. Defendant

17  asserts her "well-documented disability, mental health diagnoses and substance abuse

18  history, rather than posing a risk of nonappearance, make [her] significantly less capable

19  of flight." *Id.* at 9. Therefore, according to Defendant, her history and characteristics

20  warrant release on her own recognizance "to allow her to attend substance abuse

21  treatment." *Id.*

22  Defendant, age 39, is a lifelong Arizona resident with no passport. Doc. 14 at 2.

23  Pretrial Services has verified her community ties, which consist of two half-sisters in

24  Tucson, with whom she has only "sporadic" communication. *Id.* She is unemployed due to

25  disability and has no other family in the community identified in the report, though her

26  aunt owns the property on the Tohono O'odham Reservation in which Defendant has been

27  living since her most recent 11-month incarceration. *Id.* Defendant reports no assets,

28  income, or expenses, as she is financially assisted by her aunt. *Id.* Defendant takes daily

insulin shots to treat her diabetes and has a heart condition for which she takes no medication. *Id.* Defendant's alcohol and drug use began when she was a teenager and she told Pretrial Services she attended counseling for substance abuse about ten years ago and is interested in treatment. *Id.* at 3. Defendant's aunt verified in an August 2021 Pretrial Services report that Defendant was drinking alcohol daily, but was unsure of the amount, and she believed Defendant was having problems with drugs, but was not sure what drugs she was using specifically. *Id.* Defendant reports no suicidal thoughts, but reports she attempted suicide at age 13 due to grief she was experiencing after the death of her parents. *Id.* at 2.

Defendant's criminal history dates to age 18 and includes a variety of offenses stemming from 19 arrests, with multiple failures to appear. Doc. 14 at 3–7. Notably, Defendant failed to appear in at least three cases, was charged with alien smuggling-related offenses in four previous cases, and Defendant's supervised release was revoked in her two most recent alien smuggling cases. *Id.* Specifically, Defendant failed to appear and her supervised release was revoked four times in her 2018 case, in which she also admitted to failing to attend or reschedule her intake appointment for treatment and failed to report to her residential re-entry center. *Id.* at 6–7. Defendant's history and characteristics, therefore, weigh against release.

### 4. Dangerous Nature

Although the government asserts driving on the highway with a person in the trunk put that person in danger, it does not contend Defendant's release would pose a danger to any person or the community. Doc. 25 at 5. Defendant argues this factor weighs in favor of release because the government "has failed to identify anything in the Defendant's criminal history to suggest that her release would pose[] any kind of danger to others or the community." Doc. 26 at 9. The Court finds that Defendant's criminal history, especially her history of alien smuggling arrests and convictions, suggests that if she is released there is a reasonable possibility that she will reoffend while on pretrial release. This does present a danger to the community in a general sense. On balance, the Court finds that this factor

1 || does not favor either party.

2 ||       **B. Conditions of Release**

3 ||       A person facing trial is entitled to release under the least restrictive conditions that

4 || will reasonably assure the appearance of the person and should only be denied in rare

5 || circumstances. *Motamedi*, 767 F.2d at 1405. Even in the presence of risk, a defendant must

6 || still be released if there are conditions of release that may be imposed to mitigate the flight

7 || risk or risk to the community. *See* 18 U.S.C. § 3142(e). Any doubts about the propriety of

8 || release should be resolved in the defendant's favor. *Motamedi*, 767 F.2d at 1405.

9 ||       Defendant has repeatedly failed to comply with the conditions of her supervised

10 || release in her previous two alien smuggling cases in federal court, so the Court doubts she

11 || would comply with any conditions different from those imposed in the other cases.

12 || Although Defendant has been deemed suitable for a residential substance use treatment

13 || program, she repeatedly failed to report for residential programs in the past and instead

14 || absconded, in violation of her supervised release. Therefore, the Court finds no conditions

15 || could reasonably assure her appearance.

16 || **IV.    Order**

17 ||       **IT IS ORDERED** the government's Motion for Review of Magistrate Judge's

18 || Release Order (Doc. 25) is **GRANTED** and the release order (Doc. 19) is reversed.

19 ||       **IT IS FURTHER ORDERED** Defendant shall remain detained.

20 ||       Dated this 22nd day of June, 2023.

21

22

23

24                                          Honorable John C. Hinderaker
                                             United States District Judge
25

26

27

28 || cc: U.S. Marshals